## J. PHILLIP *vs.* G. J. WALLER.

### EXCEPTIONS TO RULINGS OF PRESTON, J.

### APRIL TERM, 1886.

### JUDD, C. J.; McCULLY and PRESTON, JJ.

In a suit for damages for malicious prosecution, defendant offered evidence as to certain keys found on plaintiff; held, this evidence was admissible, as part of the *res gestœ,* and as tending to mitigate damages, but not as affording proof of plaintiff's guilt.

Facts sufficient to induce belief in the guilt of the plaintiff must have been known to defendant before he commenced the prosecution, in order to ground upon them probable cause.

76

Evidence of conversations of defendant with police officers, while he
was making charges against plaintiff at the station, held admis-
sible as part of the *res gestae.*

Probable cause is such a state of facts in the mind of the prosecutor as
would lead a man of ordinary caution and prudence to believe or
entertain an honest and strong suspicion that the person who is
arrested is guilty. It does not depend upon the actual state of the
case in point of fact, but upon the reasonable belief of the party
prosecuting.

Exceptions overruled.

### OPINION OF THE COURT, BY JUDD, C. J.

THIS is a suit to recover damages for a malicious prosecution,
the plaintiff claiming that he was maliciously, faisely and with-
out probable cause, accused of the crime of burglary, and was
arrested and imprisoned therefor at the instance of defendant.
The jury found a special verdict, that the defendant was justified
in believing that he had probable and reasonable cause to arrest
the plaintiff, and therefore a verdict was rendered for defendant.
The case comes to us on plaintiff's exceptions to rulings of the
Court in the progress of the trial, and to various portions of the
charge to the jury. The exceptions do not appear to be set forth
in the bill in the order they were taken at the trial, and they are
therefore confusing. Some fifteen requests for instructions were
asked for.

The first exception is the admission of the testimony referring
to keys found on plaintiff after arrest. The discussion arose,
as appears by notes of the presiding Justice, as to the admissi-
bility of the testimony by the defendant Waller, as to the
statements made to him by police officer Marcos. The defendant's
counsel offered to prove that two keys were found on plaintiff, on
his arrest—that officer Marcos took the keys to the house of the
defendant on the same day; that the keys were tried on the
locks; one was found to open the outer door and one the inner
door; that the locks were peculiar ones and needed peculiar keys
to open them; also that a great many keys had been tried by
Waller and his wife without succeeding in opening the doors;
(witness produced the keys to show that they were filed to make
skeleton keys;) that Marcos had tried the keys in the house and

that this was communicated to defendant after the arrest. This evidence was offered in mitigation of damages as to continuing imprisonment of plaintiff and as part of the *res gestae*. The Court said that it would admit the testimony. The jury had retired while this discussion took place and the Court adjourned for the day, without the offered testimony being introduced. The next morning the witness, Waller, was asked, "When did you first hear of these keys?" He answered, "On the Saturday afternoon of the arrest, from my wife." This is all Waller said on the subject. Mrs. Waller testified that the first time Marcos came, after the arrest, he brought the keys.

Marcos testified: "Found these keys on plaintiff; went to Waller's house and tried doors. One opens front door, and one back door. I call the front door the one on the Waikiki side. One opens inner door. I asked defendant as to keys. He said one belonged to room upstairs, and one to his own room in Fowler's yard. I went upstairs; the key would not fit."

The plaintiff was recalled to account for the keys. He said: "This is the key of the room in which my clothes are kept in Waller's shop. This belongs to Fowler. I occupied room No. 8. The one at Waller's was not tried because there was a new lock; the other (key) opens my room at Fowler's. I did not file the keys."

We think the testimony was admissible as part of the *res gestae*, and as tending to mitigate damages, as this knowledge was acquired by the defendant on the afternoon of the arrest and while plaintiff was still in prison. So far as it afforded proof of the guilt of the plaintiff, it was probably not admissible, and the jury was charged that it must appear that the facts, or so much of them as was sufficient to induce the belief in the guilt of the plaintiff, were communicated to defendant before he commenced the prosecution.

In *Bacon vs. Towne*, 4 Cush., the Court say that the defendant in an action for malicious prosecution may give evidence of facts tending to prove the plaintiff guilty of the criminal charge imputed to him, both in proof of probable cause and mitigation of damages; although he is not prepared with evidence to show

that these facts were known to him at the time of the complaint against him.

This instruction, we may here remark, covers instruction No. XIV, asked for by plaintiff, as follows: "Only those facts and circumstances, which were within the knowledge of defendant, prior to or at the time of preferring the charge, can tend to exonerate him from malice and permit him to ground upon them the belief that reasonable and probable cause existed for his actions."

The second exception is to the admission of evidence of defendant, of a conversation with officer Marcos, and the objection was made that, as Marcos was not an attorney or counsellor at law, he was not competent to give advice.

The defendant was asked what he did after the information was given him. He said: "Police officer Fehlber said I had better see Deputy Marshal, Mr. Dayton. I followed Fehlber to the station house and asked to see Dayton. Was told by Marcos that Dayton was busy. Marcos was then engaged in writing out the warrant for the arrest of men. I gave no instructions. I found he expected me to swear out warrant. I objected; asked consequence if not guilty. He said: 'They can't touch you.' I still objected. He said: 'We always protect honest men.' I then swore out warrant on assurance given by Marcos." The counsel for plaintiff excepted to this evidence as irrelevant and incompetent because the police officer was not known to be an attorney or counsellor at law, competent to give advice, and the evidence should be stricken out.

The Court declined to order the testimony stricken out. It was not offered by defendant's counsel as a justification of the defendant; as having acted upon responsible advice; but it was given by defendant as a narrative of events. It was the account of his proceedings in swearing out the warrant in question and could not have been excluded.

We pass now to the instructions prayed for:

1. An abandonment of a prosecution is sufficient to entitle the plaintiff to maintain this action; it is not necessary that he should have been tried and acquitted. The Court charged: "The

plaintiff must prove that he has been prosecuted by defendant, and that the prosecution terminated. This has been proved."

We think this was all that was necessary.

The second, third, fourth and fifth instructions requested are as follows:

II. It does not depend upon the guilt of the accused, nor whether the prosecutor believed him guilty, to show probable cause, but whether or not the facts and circumstances within the defendant's knowledge, and upon which he acted, were sufficient to raise a reasonable ground of suspicion in the mind of an ordinarily cautious man, and did upon such ground defendant believe plaintiff guilty.

III. If defendant did not know any facts constituting probable cause, the existence of probable cause is no defence.

IV. The plaintiff must show knowledge or information entitled to credit which led him to prosecute, to establish the existence of probable cause.

V. If the jury find from the evidence that the facts and circumstances within the defendant's knowledge were not sufficient to raise a reasonable ground of suspicion in the mind of an ordinarily cautious man of the guilt of plaintiff, they cannot find that probable cause existed.

In place of them the Court charged : " Probable cause is such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person who is arrested is guilty. It does not depend upon the actual state of the case in point of fact, but upon the reasonable belief of the party prosecuting."

Instruction VI is : " The want of probable cause cannot be implied. It must appear by proof, but malice may be implied from a want of probable cause when the latter is proven."

The Court charged : " Want of probable cause must be proven by plaintiff. It cannot be inferred. Proof of malice need not be direct. It may be inferred from circumstances. If there were no probable cause, malice may be presumed." We think the charge covered the ground exactly.

Instruction VII is : "The defendant must believe in good faith in the truth of the charge preferred by him against the plaintiff,

and in the plaintiff's guilt; this is essential to establish reason-able and probable cause for the criminal prosecution, and it is for the jury to determine what the defendant's belief was, if such belief existed in good faith, and whether he had reasonable grounds for that belief; for if he formed his conclusion rashly and inconsiderately, he is not warranted in acting on his belief." The jury were asked specially to say whether from the facts they found that defendant was justified in believing that he had probable and reasonable cause to arrest the plaintiff, and they found that he was justified.

As to instruction VIII, which reads: "Defendant cannot show that he acted under the advice of a magistrate or other person not learned in the law."

As we have seen above, in considering the second exception, the defendant did not attempt to show that he was justified by acting upon the advice of counsel, and it was not claimed that officer Marcos' advice justified him.

Instruction IX: "If the jury find from the evidence that the defendant did not believe in the truth of the charge which he was induced to make against the plaintiff, malice may be in-ferred." This is instruction VII, put conversely, and the jury under the instruction given by the Court found that the de-fendant was justified in believing that probable cause existed, etc.

Instruction X: "Proof of want of probable cause will warrant a presumption of malice." This is a repetition of Instruction VI, and our observations thereon will apply to it.

Instruction XI: "The charge, which is founded on the accuser's own knowledge, will require proof to that extent to warrant such a charge, but where it rests on suspicion only, such suspicion must be created by circumstances which satisfy a cau-tious person." This is, as we think, covered, so far as is neces-sary, by the charge of the Court above given in place of Instruc-tions II, III, IV and V, asked for.

Instruction XII: "If circumstances of suspicion existed which might have been removed by proper inquiry, and no inquiry at all was made, it is evidence of a want of reasonable and probable cause." To this the answer is plain. It is not shown that any

inquiry, under the circumstances, would have removed the suspicion entertained by defendant.

A disposition not to investigate further, if investigation would have removed the suspicion, might be malice, but it would not show a want of probable cause, for that is founded upon the suspicion.

Instruction XIII: "If the charge preferred by the defendant against the plaintiff was of such a nature, and made under such circumstances, that no well-intentioned person would find a criminal charge upon them without ascertaining their truth or falsity, and the means of inquiry and ascertaining the truth being within his reach, had he thought fit to avail himself of such means, and the defendant failed to ascertain such truth or falsity, then it will show that he was influenced by malice." This is objectionable in its form as being argumentative.

Instruction XIV: "It is competent for the jury to consider any doubt which defendant expressed about plaintiff's guilt at the time the charge was preferred by defendant, in deciding whether he believed in good faith that the plaintiff was guilty of the criminal charge."

This must refer to the conversation held between defendant and Marcos, and to which the attention of the jury was called by the Court. It was left to them whether he expressed doubts as to plaintiff's guilt, and whether the effect of the whole conversation was such as to prove or disprove the good faith of the defendant in preferring the charge.

Instruction XV is already disposed of *supra*.

The instructions asked for by Mr. Hatch for defendant, and which were given by the Court, are as follows:

First: "Anything which will create in the mind of a reasonable man the belief that a felony existed, and that the party charged was in any way concerned in it, is probable cause."

Secondly: "Plaintiff must show malice on part of defendant, or that he acted from improper motives."

Thirdly: "If Waller had any reason, however slight, to believe plaintiff guilty of robbery, plaintiff must then prove actual malice."

These are in consonance with the well settled principles con-

trolling such cases, defining probable cause, and that 'if it exists, malice must be shown, and coupled with the other instructions of the Court were correct.

The Court has charged that "if no probable cause is shown, malice might be presumed." It is claimed in addition that certain expressions used by the Court in its charge were improper comments on the testimony, and tended to prejudice the jury against plaintiff, as follows:

"The plaintiff has not accounted for where he was on the night of the theft." We are referred to the testimony where plaintiff says he was at the telephone to receive orders for the morning delivery of meat till about half-past 8 o'clock in the evening; locked up shop at 9 o'clock and went home. As the robbery may have been committed at a later hour of the night, the remark of the Court was justified. As to the other expression objected to, that "the plaintiff had not testified that he did not steal the money," we understand that it arose in this way: The Court said that if the jury found for the plaintiff, and believed that he had made the charge maliciously, he would be entitled to substantial damages; but if they thought the plaintiff was guilty of the burglary, they could not give damages to the extent they otherwise would. It was for the plaintiff to show that the charge was false; and though he had been called as a witness he had not denied his guilt, or accounted for himself on the night of the robbery. The plaintiff was not asked if he had stolen the money, and the record therefore shows no specific denial of the charge. We wish to say further, that counsel should call the Court's attention to specific portions of the charge objected to at the conclusion, and thus afford the Court an opportunity of reviewing the language used; and it is not fair to the Court to except generally to the charge, and thereafter in the exceptions to single out special portions as objectionable.

It is finally objected by plaintiff's counsel "that it was improper for the Court to say to the jury that they might take into consideration the effect which actions of this nature may have upon prosecution of crime."

The comment was made in this connection: The Court said that "bona fide prosecutors were entitled to protection, and that

in considering the question of damages they ought to take into consideration the effect which actions of this nature may have on prosecution for crime."

The Attorney-General was counsel for the plaintiff. He is by law the public prosecutor; and if he should appear as counsel to sue for damages in behalf of parties for matters arising out of the criminal prosecutions, it would tend to discourage, if not to prevent, prosecutions for offences. Both counsel mentioned to the jury this circumstance of the Attorney-General's appearing, and it was not improper for the Court to express its disapprobation of this course, and its effect upon the prosecutions for crime.

The direction of the Court to the jury " to find a verdict for defendant on their finding that the plaintiff had probable cause to commence the prosecution", is excepted to. We think that this was right. The gist of the action was whether there was probable cause shown, and this being found by the jury, the verdict for defendant would follow as a matter of course. The matter of evidence specially raised in the motion for a new trial, on the ground that the verdict of the jury was not supported by the evidence, is covered by the ruling of the Court on the second exception, so far as the conversation with Marcos is concerned.

As to the statement in the bill that Waller said "he believed Campbelman's statement to be entirely untrustworthy," it is not supported by the Judge's notes. We find it to be as follows: Waller testifies: " Officer Fehlber came to my store and said : ' The man Campbelman knows who stole your money.' I answered Fehlber: ' This man has been to me before, and I hardly thought his evidence was worth much,' and later on I told Fehlber I did think Campbelman's evidence was worth anything." This was the opinion of Waller on the importance of Campbelman's testimony, and not as to its credibility.

We think the exceptions should be over-ruled, and so order.

*Paul Neumann*, for plaintiff.

*W. A. Whiting* and *F. M. Hatch*, for defendant.

Honolulu, June 21, 1886.